ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JUL 18 2000

NANCY DOHERTY, CLERK

By _____
      Deputy

| | |
|---|---|
| DR. STEPHEN SOUTHWELL-GRAY, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3-00CV1539-H |
| vs. § | |
| § | |
| COLIN JONES and § | |
| HENGST FINANCE, INC., § | |
| § | |
| Defendants. § | |

## ORIGINAL COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Dr. Stephen Southwell-Gray ("Southwell-Gray") files this Original Complaint and Jury Trial Demand against Defendants Colin Jones ("Jones"), and Hengst Finance Inc. ("Hengst Finance"), and for his causes of action, would respectfully show the Court as follows:

### I.

### THE PARTIES

1.  Plaintiff Dr. Stephen Southwell-Gray ("Southwell-Gray") is an individual and citizen of New Zealand residing at Batty Road, Te Hihi, RD1, Papakura, New Zealand.

2.  Defendant Colin Jones ("Jones"), is an individual, who may be served with process either at his current residence, 5769 Beltline, Apt. 312, Dallas, Texas 75240.

3.  Defendant Hengst Finance Inc. is a corporation that was organized and existed under the laws of the State of Texas, with its last known principal place of business at 5220 Spring Valley Road, Suite 300, Dallas, Texas 75240. Hengst may be served by service of

process upon its registered agent, Colin Jones, as Registered Agent, at this same address or by service upon any officer of the company located at that business address.

## II.

## JURISDICTION AND VENUE

4.      This is an action for the recovery of money and other appropriate relief arising from breach of contract, misappropriation and conversion, and unjust enrichment. This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332 in that the action is between citizens of a foreign country and different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and attorney's fees.

5.      Venue of this action is proper in the Northern District of Texas under 18 U.S.C. §1965, because the Defendants' predicate acts occurred within or originated from this District in whole or in part. Venue also lies within this District in that during all times material hereto, each of the Defendants resided, maintained a principal place of business or, personally or through their agents and employees, routinely and systematically traveled to and from and conducted business within this District.

## III.

## SUMMARY OF CLAIMS

6.      In this lawsuit, Plaintiff Southwell-Gray seeks to recover more than $10 million in investment proceeds (principal and interest) that were fraudulently obtained from him, and which were wrongfully converted by the Defendants for their sole use and benefit. After converting monies they had obtained under false pretenses from Southwell-Gray, the Defendants have attempted to "launder" the Plaintiff's funds through a number of offshore bank accounts. Further,

several of the Defendants have "gone underground" to avoid Southwell-Gray's diligent efforts to recoup his funds and to locate where the Defendants have gone into hiding.

## IV.

## STATEMENT OF FACTS

7. On or about March 22, 1997, Southwell-Gray entered into an Agreement with Defendant Hengst acting through its President, Defendant Jones, in which Southwell-Gray agreed to advance Hengst the sum of $10 million U.S. dollars for investment purposes (the "Investment Proceeds") under the specific terms and conditions that are expressly set forth in the Agreement.

8. The parties then entered into an Addendum to the Agreement dated May 23, 1997 (the "May Addendum"). Under the Agreement and Addendum, Hengst was to pay Southwell-Gray for a period of ten months sums equal to one/third of all net profit payments from third parties that Hengst received in connection with its investment of the Investment Proceeds. Southwell-Gray also authorized, in the May Addendum, the transfer of the Investment Proceeds from deposit in his Swiss bank account with the Canadian Imperial Bank of Commerce in Geneva, Switzerland to a bank account at Caixa De Credito Agricola Mutuo Oeiras C.R.I. in Lisbon, Portugal (the "Caixa Bank") under the account name of "Hengst/2".

9. Under the terms of the May Addendum to the Agreement, the bank transfer of the Investment Proceeds was made strictly on the understanding that the signature of Southwell-Gray as co-signatory with Hengst was required on all transactions in the Hengst/2 account with only very limited exceptions as expressly provided in the May Addendum.

10. By letter dated May 23, 1997, Jones issued instructions to the Caixa Bank in which he notified this Bank of the conditions governing the Hengst/2 account. These conditions were

the same as those set forth in the May Addendum between Southwell-Gray and Hengst and Jones. On May 23, 1997, Caixa Bank, by an authorized representative, accepted the terms contained in the May Addendum and acknowledged Southwell-Gray as a co-signatory to the Hengst/2.

11. Relying on the Agreement and the May Addendum, and the specific terms and conditions contained therein, Southwell-Gray caused the Investment Proceeds to be wire transferred from his account at the Canadian Imperial Bank of Commerce in Geneva, Switzerland to the Hengst/2 account at the Caixa Bank in Lisbon, Portugal.

12. In the May Addendum, Hengst agreed to keep Southwell-Gray fully informed in writing in a timely manner, and at least once every two banking weeks, of all matters and actions taken in regard to the Investment Proceeds. Under the terms of the Agreement, upon termination of the Agreement by Hengst's material breach or termination of the project for any reason, Hengst had committed to pay Southwell-Gray within seven banking days of the termination, the entire amount of the Investment Proceeds and all outstanding fees that were then due to Southwell-Gray.

13. In 1997 Southwell-Gray was advised by Hengst that the Investment Proceeds were invested with Bear Stearns and he received a notice of returns that had purportedly been generated as a result of that investment. By letter of October 8, 1997, Jones advised Southwell-Gray that Hengst had contracted with their own team of traders to transact in securities and to effect that result. Jones formed a revocable Caixa Trust in the State of Texas.

14. In the letter of October 8 1997, Jones represented to Southwell-Gray that, among other things, the contracts with the traders and the Caixa Trust agreements specify that the "principal deposit" could not leave the trust account, except to be repatriated to Caixa Bank or

transferred at their instruction. According to Jones, no calls on or liens or encumbrances could be placed on this principal deposit and all securities purchased against the principal deposit were obtained only on a pre-sold basis and issued from an AA-rated institution. In the October 8 letter, Jones also assured Southwell-Gray that his "money is never at risk."

15. Jones further represented to Southwell-Gray that the Caixa Trust structure was similar to that used by the Caixa Bank for trading with Bear Stearns, but that the creation of the Caixa Trust "gives even more security over the principal deposit and affords us much more control over the operations ... and allows us to use our supplies of securities ensuring a far better return."

16. On or about November 7, 1997, unbeknownst to Southwell-Gray and without his co-signatory authorization, Caixa Bank issued a disbursement directive to Bear Stearns to remit immediately from its account the sum of $8.5 million dollars U.S. for wire transfer to the Bank of America in Dallas, Texas for the benefit of the Caixa Trust account. Southwell-Gray never authorized this disbursement of his funds and Caixa Bank never sought or obtained his consent to the transfer of funds to the Bank of America.

17. Again, unbeknownst to Southwell-Gray and in direct contravention of the written May 23, 1997 Instructions to Caixa Bank, which it accepted and agreed to, the President of the Caixa Bank advised Caixa Trust, by communication dated November 22, 1997, that in compliance with the Caixa Bank's decision of its Board of Directors, "the disposition and use of all funds deposited in the Caixa Trust, and all benefits arising therefrom, shall henceforth be under the instructions of Dr. Colin Jones of Hengst Finance, Inc."

18. Upon information and belief, all or substantially all of the Investment Proceeds were transferred from the Hengst/2 account by Caixa Bank to the Caixa Trust in Dallas, Texas and then placed within the dominion and control of Jones, all without the authorization (written or otherwise) or consent of Southwell-Gray as the co-signatory on the Hengst/2 account.

19. By letter of December 16, 1997, Jones sent Southwell-Gray a statement from a Bank in Zurich confirming that $8.5 million that belonged to Southwell-Gray was transferred from deposit in the Caixa Trust and was under some undefined "fiduciary security" of the Zurich bank. Jones also advised that he was awaiting transfer from Bear Stearns to this Zurich Bank of the remaining $1.5 million U.S. dollars that it had on deposit. At the time, Southwell-Gray was not provided with any account information regarding the Zurich bank account, and there was no specific written agreement regarding the terms and conditions governing that account. Jones assured Southwell-Gray in the December 16, 1997 letter, however, that the funds "will not be moved from the account for any of the transactions, and will have no liens placed against it. In addition, I have executed, signature guaranteed documents, with my code, that provides an additional full guarantee of principal from our trust."

20. In response to Southwell-Gray's repeated requests for assurances from Jones as to the security of the Investment Proceeds, a representative of Hengst, by a fax dated March 11, 1998, represented that "i. the principle [sic] of $8.5 million definitely remains under fiduciary control of the Zurich bank; ii. negotiations are in progress with the Portuguese bank in respect to the return of the remaining principal of $1.5 million; iii. the first substantial payment of return to you is in the pipeline."

21. During the period of May 27, 1998 through April 9, 1999, Jones made promises in writing more than 50 times to Southwell-Gray to settle the matter and return the Investment Proceeds to him. During this period, all reported returns on the Investment Proceeds ceased and Southwell-Gray was unable to retrieve the capital Investment Proceeds from the clutches of Jones.

22. By fax dated April 15, 1999, Southwell-Gray demanded that Jones transfer the Investment Proceeds immediately to Southwell-Gray's account and to confirm the transfer within 24 hours. Jones continued to stonewall Southwell-Gray claiming that the funds would be returned week after week. Becoming increasingly frustrated over not having the Investment Proceeds restored to his account, Southwell-Gray again demanded on May 28, 1999 that Jones immediately transfer the Investment Proceeds to Southwell-Gray's account. Despite repeated written demands, none of the Investment Proceeds have been returned to Southwell-Gray.

## IV.

## CAUSES OF ACTION

### Count 1 - Fraud

23. Southwell-Gray realleges all allegations set forth in paragraphs 1 through 22 above as if set forth verbatim herein.

24. The Defendants knowingly misrepresented to Southwell-Gray that all of the funds he provided to them would be used solely for investment purposes and that he would share in the investment returns. The Defendants intended that Southwell-Gray would rely on their materially false statements, and Southwell-Gray did, in fact, rely on their false representations. As a result, Southwell-Gray was fraudulently induced to enter into the Agreement with the Defendants and to

provide them with $10 million in Investment Proceeds that he understood would be used solely for investment purposes on his behalf.

25. Rather than investing the Investment Proceeds and providing Southwell-Gray with returns on the invested funds, however, the Defendants converted these funds for their own use and benefit and to the detriment of Southwell-Gray. The Defendants' fraudulent scheme and their reprehensible course of conduct has deprived Southwell-Gray of the Investment Proceeds, as well as the substantial accrued interest that he is entitled to receive on these funds, the full amount of which he seeks to recover in lawsuit.

### Count 2 - Breach of Contract

26. Southwell-Gray realleges all allegations set forth in paragraphs 1 through 25 above as if set forth verbatim herein.

27. The Defendants have materially breached the Agreement with Southwell-Gray and their several breaches include, but are not limited to, (i) failing and refusing to notify Southwell-Gray of the location of the Investment Proceeds at all times, (ii) repeatedly disbursing Investment Proceeds to various bank or brokerage accounts without seeking or obtaining Southwell-Gray's authorization or consent, and (iii) failing and refusing to promptly return all of the Investment Proceeds to Southwell-Gray as he directed.

28. As a result of the Defendants' repeated, and material breaches of the Agreement, Southwell-Gray has been damaged in the minimum amount of $10,000,000.00, exclusive of accrued interest.

### Count 3 - Conversion

28. Southwell-Gray realleges all allegations set forth in paragraphs 1 through 27 above as if set forth verbatim herein.

29. The Defendants wrongfully exercised dominion and control over Southwell-Gray's property, and they otherwise unlawfully converted for their own use and sole benefit Investment Proceeds that belonged to Southwell-Gray. The Defendants fraudulently induced Southwell-Gray to provide these Investment Proceeds to them under false pretenses, all to his detriment.

### Count 4 - Unjust Enrichment

30. Southwell-Gray realleges each and every allegation set forth in paragraphs 1 through 29 above as if set forth verbatim herein.

31. The Defendants unjustly enriched themselves by wilfully, intentionally and wrongfully defrauding and converting Southwell-Gray's monies for their own use and benefit.

32. Under these circumstances, it would be manifestly unjust and inequitable for the Defendants to profit from the loss and damages that they have caused Southwell-Gray to suffer. Therefore, the Defendants must be required to return to Southwell-Gray all of the monies they converted from him, together with all accrued interest.

### Count 5 - Punitive Damages

33. Southwell-Gray realleges each and every allegation set forth in paragraphs 1 through 32 above as if set forth verbatim herein.

34. Southwell-Gray reasonably believes that the conduct and specific actions of the Defendants as alleged herein were done willfully, maliciously and intentionally, with a willful and conscious disregard of Southwell-Gray's rights, and with the specific intent to defraud him and

convert his funds for their own use. Southwell-Gray therefore prays for an award of punitive damages in the amount that is determined by the jury at trial.

## PRAYER

WHEREFORE, Plaintiff Stephen Southwell-Gray, prays for an award of the following relief of and from Defendants Colin Jones and Hengst Finance Inc., jointly and severally:

1. On all of Southwell-Gray's causes of action, an award of money damages in the minimum amount of $10 million dollars;

2. An award of accrued pre- and post-judgment interest of and from the Defendants at the highest rates allowed by law;

3. An award of punitive damages in an amount determined by the jury as sufficient to punish the Defendants for their wrongdoing and misconduct; and

4. On all causes of action, all such other and further relief that the Court determines is just, fair and equitable including, but not limited to, Southwell-Gray's costs of suit including his reasonable attorney's fees incurred in prosecuting his claims in this action.

## JURY DEMAND

Plaintiff Southwell-Gray hereby demands a trial by jury on all issues to which he is entitled to a trial by a jury of his peers.

Respectfully submitted,

*[signature]*

Leonard A. Hirsch
State Bar No. 09717300
Stephanie L. Reaugh
State Bar No. 24013385

HAYNES AND BOONE, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone:     214-651-5000
Telecopier:    214-651-5940

AND

James. P. Jalil
SHUSTAK JALIL & HELLER
454 Madison Avenue, 15th Floor
New York, New York 10022
Telephone:     212-688-4900
Telecopier:    212-688-6151

*(Subject to the Court's permission upon presentation of proper Motion and Order)*

**ATTORNEYS FOR PLAINTIFF
DR. STEPHEN SOUTHWELL-GRAY**

D-801068.4